IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAVIER VASQUEZ,

      Petitioner,

v.                                                                    No. CIV 06-22 BB/LFG

MICHAEL MARTIN, Warden,

      Respondent.

**MAGISTRATE JUDGE'S FINDINGS
AND RECOMMENDED DISPOSITION**[1]

**Findings**

    1.    This is a proceeding on a petition for writ of habeas corpus brought under 28 U.S.C. § 2254, filed January 9, 2006 [Doc. No. 1]. Petitioner Javier Vasquez ("Vasquez"), currently confined at the Roswell Correctional Center in Roswell, New Mexico, challenges the judgment and sentence entered by the Fifth Judicial District Court in State v. Vasquez, No. CR 2004-336 JLS (Eddy County, New Mexico).

    2.    In his federal habeas petition, Vasquez did not expressly set forth any claims. Instead, he attached to the petition some typed materials he identified as "Facts," which may be read to attempt to assert certain claims. [Doc. No. 1, Attachment.] For example, under the section entitled

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

1

"Argument," Vasquez states that his trial counsel failed to properly cross-examine a witness. [Id.] Vasquez also alleges that he was stopped without probable cause and that his attorney or the State failed to provide him with relevant or exculpatory evidence. [Id.]

3.      On February 23, 2006, Respondent Michael Martin ("Respondent") filed an Answer [Doc. No. 9] and a motion to dismiss [Doc. Nos. 7 and 8.] In addition to the possible ineffective assistance of counsel claim, Respondent describes Vasquez's claims as encompassing questions of whether officers had reasonable suspicion to stop Vasquez when the description of the suspect given by a dispatcher did not exactly match the description given by the victim, whether a search warrant was required, identification of Vasquez after arrest, the State's adherence to rules of professional conduct, application of rules of evidence and professional conduct, and the lawfulness of the search and seizure under the New Mexico Constitution. [Doc. No. 8.]

4.      Respondent asks the Court to dismiss Vasquez's § 2254 petition on grounds that he fails to state any meritorious constitutional claim cognizable under 28 U.S.C. § 2254, and also because he procedurally defaulted on all issues but one (reasonable suspicion for the stop). With respect to the reasonable suspicion claim, Respondent argues that the New Mexico Court of Appeals held there was sufficient evidence for officers to stop Vasquez even though there may have been a few minor differences between physical descriptions of the offender given by the dispatcher and the victim. According to Respondent, the state court's decision on this claim did not result in a decision that was contrary to federal law nor an unreasonable application of federal law, and in addition, was not based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

5.      With respect to Vasquez's other possible claims, Respondent states that they are procedurally defaulted because Vasquez did not raise them on direct appeal but could have done so. Respondent then states "[o]n this basis (presumably because of the procedural default), [Respondent] concedes exhaustion of all claims identified above", including the ineffective assistance of counsel claim. [Doc. No. 8, p. 3.]

6.      The Court generally agrees with Respondent's argument and position regarding Vasquez's claims. However, the Court does not find that an ineffective assistance of counsel claim is procedurally defaulted for the reasons explained *infra*. Since Respondent conceded exhaustion as to all claims, including the ineffective assistance of counsel allegations, the Court ordered the record proper so that it could properly analyze that claim. The Court has now reviewed the record proper, including one volume of the state court proceedings and 17 audio cassette tapes of pre-trial hearings, the one-day jury trial and Vasquez's sentencing.[2]

## Factual and Procedural History

7.      On September 23, 2004, a Criminal Information was filed against Vasquez in the Fifth Judicial District Court setting out 3 counts: (1) possession of burglary tools (4th degree felony); (2) resisting, evading or obstructing an officer (misdemeanor); and (3) possession of drug paraphernalia (misdemeanor). [RP 1-2.]

8.      In the Criminal Complaint, the charges are described and a narrative is provided. The narrative states that in 2004, the Carlsbad Police Department had been investigating a series of residential burglaries over a period of three months. The burglaries targeted elderly residents in

---

[2]The Court refers to the record proper as "RP" and to the tapes by identifying the date and type of proceeding, e.g., 2/28/05 Trial Tape.

retirement home areas. The suspect was described as a Spanish male, with a stocky build and dark facial and head hair, who rode a bicycle. [RP at 7.] On September 6, 2004, Carlsbad police received a call from an 82 year-old resident complaining that a male was currently trying to break into her apartment. The complainant described the man has wearing a blue shirt and blue pants, having a stocky build and facial hair. Police responded to the call and observed a Spanish male in the vicinity of the complainant's apartment. The male had facial hair, was of a stocky build, and was wearing a blue shirt and pants. He was described as riding a red bicycle very fast. Police ordered the male to stop but even though the officers were riding in a clearly marked police patrol car, the man fled quickly on his bicycle. A chase ensured, involving finally a foot chase. A short time later, police apprehended Vasquez, who was hiding in a backyard at that time. Upon apprehending Vasquez, police found a number of tools on him typically used for burglaries, including three screwdrivers, a flashlight, leather gloves and womens' nylon stockings. Police also discovered a dirty syringe in the man's right sock that had brown residue in it. The male identified himself as Javier Vasquez. Police were familiar with him and knew that he was a heroin addict.   [RP at 8.]

9.     On September 15, 2004, a preliminary hearing was held. [RP at 13.] Vasquez was represented by public defender Jeanne Lahrman at the hearing. [RP at 13, 15.] Attorney Lahrman filed a number of pre-trial motions, including a request for discovery, notice of witnesses, a demand for speedy trial, a notice of peremptory excusal of the district judge, and several motions for bond reduction. [RP at 21-24, 27, 36, 38.] On October 12, 2004, Vasquez entered a not guilty plea to the charges contained in the Information. [RP at 26.] On November 3, 2004, defense counsel filed a motion to suppress evidence arguing *inter alia* that there was insufficient probable cause or articulable facts to stop Vasquez, the stop was illegal, and the search and seizure were not incident

to a valid arrest. [RP at 40.] After a hearing on December 1, 2004, the motion to suppress was denied. [RP at 52.] The jury trial was held on February 28, 2005. [RP at 56.] A jury found Vasquez guilty of all three charges. [RP at 74-76.]

10. On March 4, 2005, a supplemental criminal information was filed, detailing why Vasquez should be found a habitual criminal offender under NMSA § 31-18-17. [RP at 83.] On March 7, 2005, Vasquez was sentenced. [RP at 86.] Judgment and Sentence were entered March 16, 2005. Vasquez received a sentence of 2 years and 181 days for his convictions, and an additional period of 4 years of incarceration for his habitual offender status. [RP at 88.] His total sentence was 6 years, 181 days. [RP at 89.]

11. On April 8, 2005, defense attorney moved the Court for an order appointing appellate counsel for Vasquez. [RP at 98.] The Court granted the request. [RP at 99.] Vasquez's Notice of Appeal was filed on April 13, 2005. [RP at 101.] The Docketing Statement, filed June 13, 2005, sets out a single issue concerning whether the officer had reasonable and articulable suspicion to stop Vasquez when the only description given to police was that the burglar was a stocky man or woman in dark colored clothing with reddish hair. [RP at 112.] Attorney Lahrman continued to represent Vasquez on appeal.

12. On July 21, 2005, the New Mexico Court of Appeals filed a proposed summary affirmance of the conviction, addressing the exact issue raised by Vasquez. [RP at 124.] Vasquez filed a memorandum in opposition to the proposed affirmance. The Court of Appeals issued a Memorandum Opinion affirming Vasquez's conviction on October 24, 2005. [RP at 130.]

13. On October 27, 2005, Vasquez filed a petition for writ of certiorari on the same issue raised on appeal. [Doc. No. 9, Ex. G.] On November 28, 2005, the New Mexico Supreme Court

denied Vasquez's petition. [Doc. No. 9, Ex. H.] The mandate was issued January 26, 2006. [Doc. No. 9, Ex. I.]

14.   Vasquez did not file a state habeas petition. On January 9, 2006, he filed the present federal habeas petition. [Doc. No. 1.]

## Discussion

### Exhaustion of Remedies

15.   Respondent concedes that Vasquez exhausted his remedies but argue that he advances no cognizable claim under 28 U.S.C. § 2254 and that his claims are procedurally barred (with the exception of the one claim concerning an alleged unlawful stop). The Court addresses the unlawful stop claim first.

### Deference to State Court Adjudications

16.   A federal court is precluded from granting habeas relief on any claim adjudicated on the merits by the state courts, unless the proceeding resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d); Smallwood v. Gibson, 191 F.3d 1257, 1264-65 (10th Cir. 1999), *cert. denied*, 531 U.S. 833, 121 S.Ct. 88 (2000). "Federal habeas courts do not sit to correct errors of fact or to relitigate state court trials. Our jurisdiction is limited to ensuring that individuals are not imprisoned in violation of the Constitution." Thompson v. Oklahoma, 202 F.3d 283 (Table, text in Westlaw), No. 98-7158, 2000 WL 14404, at *6 (10th Cir. Jan.10, 2000), *cert. denied*, 530 U.S. 1265, 120 S.Ct. 2725 (2000).

17.   Section 2254(d) was amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which "increase[d] the deference to be paid by the federal courts to the state

court's factual findings and legal determinations." Houchin v. Zavaras, 107 F.3d 1465, 1470 (10th Cir. 1997). The Tenth Circuit Court of Appeals further explained:

> Under § 2254(d)(1), a federal court may grant a writ of habeas corpus only if the state court reached a conclusion opposite to that reached by the Supreme Court on a question of law, decided the case differently than the Supreme Court has decided a case with a materially indistinguishable set of facts, or unreasonably applied the governing legal principle to the facts of the petitioner's case. 'Under § 2254(d)(1)'s unreasonable application clause . . ., a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, the application must also be unreasonable.' 'In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.' AEDPA also requires federal courts to presume state court factual findings are correct, and places the burden on the petitioner to rebut that presumption by clear and convincing evidence.

Sallahdin v. Gibson, 275 F.3d 1211, 1221-22 (10th Cir. 2002) (*relying on* 28 U.S.C. § 2254(e)(1)).

18. With respect to Vasquez's allegations that police officers did not have reasonable suspicion to stop him because of inconsistent physical descriptions, this claim clearly was adjudicated by the state court on the merits. The Court of Appeals addressed this claim on appeal at length and rejected Vasquez's arguments. The New Mexico Supreme Court denied Vasquez's petition for writ of certiorari.

19. In Vasquez's direct appeal, he argued, as he did in his motion to suppress before the state court judge, that there was insufficient probable cause or articulable facts to stop him on the night in question. When Vasquez was stopped by police, he was wearing blue clothing, had a mustache and short-cropped hair, and was riding a red bicycle rapidly according to the responding officer. Vasquez alleged that Ms. Pat McCoy, the 82 year-old woman who called 911 about the

attempted burglary, gave only a general physical description of the suspect. It is true that Ms. McCoy testified at the suppression hearing and at trial that she did not get a good view of the burglar, it was dark outside, she did not really see the suspect's face, she did not actually know if it was a woman or man, and she only had an "impression" of how the suspect looked. Yet, the recording of Ms. McCoy's call to 911 included her description that the burglar was wearing dark clothing, had short hair, perhaps reddish in color, that he was "big" or "stocky," and that he might have had a mustache.[3] The responding police officer testified in a preliminary hearing that the description given to him by the dispatcher (after speaking to Ms. McCoy) was that the suspect was a Hispanic male, stocky with facial hair, wearing possibly blue clothing and riding a red bicycle. It was undisputed that during Ms. McCoy's 911 call, she did not state the suspect was Hispanic or describe him as riding a bicycle.

20.     In analyzing Vasquez's argument on appeal, the Court of Appeals noted the description given by Ms. McCoy (stocky male, with short reddish hair, wearing dark clothes), and that within five or ten minutes of receiving Ms. McCoy's 911 call, police spotted a male in the vicinity of Ms. McCoy's neighborhood, who "basically" fit the 911 description. While police commanded Vasquez to stop, he refused to do so and fled. Under these circumstances, the Court of Appeals determined that police had reasonable suspicion to stop Vasquez even if there were minor inconsistencies between Ms. McCoy's description and that of the dispatcher's. [RP at 132.]

21.     As noted above, AEDPA requires that the federal court presume state court factual findings to be correct. After careful examination of the state court's decision, this Court concludes that the state court proceeding did not result in a decision that was contrary to clearly established law

---

[3]The tape recorded call was not entirely clear when reviewed by the Court, but it appeared that Ms. McCoy may have said something about a mustache during the 911 call. [2/28/05 Trial Tape 6.]

or that it involved an unreasonable application of clearly established federal law. Moreover, after reviewing the audiotapes of the pretrial and trial proceedings, the Court finds that the state court's decision was not based on an unreasonable determination of the facts in light of the evidence presented. [12/1/04 Motion to Suppress Tapes 1&2; 2/28/05 Trial Tapes 5-7.]

### Procedurally Barred Claims

22.     The concept of procedural default in habeas corpus cases is grounded in concerns of comity and federalism. Jackson v. Shanks, 143 F.3d 1313, 1317 (10th Cir. 1998).

> Where a state has raised and preserved the issue of procedural default, federal courts generally do not review issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the default is excused through a showing of cause and actual prejudice or a fundamental miscarriage of justice.

Id. (internal citation omitted).

23.     Respondent raised the issue of procedural default as to all of Vasquez's remaining claims, *i.e.,* those claims concerning search warrant issues, search and seizure issues, identification of Vasquez after arrest, and the State's alleged failure to comply with certain state rules of evidence and professional conduct.[4] It is true that Vasquez did not raise any of these claims on direct appeal or on a state habeas petition (as he did not file one). Thus, none of these claims, as best they can be identified from Vasquez's pleadings, were addressed by state courts.

24.     Under New Mexico law, Vasquez is deemed to have waived these claims by failing to raise them on direct appeal. Duncan v. Kerby, 115 N.M. 344, 346 (1993). Under similar

---

[4]Under the "facts" portion of Vasquez's attachments to his petition, he also alleges improprieties during grand jury proceedings, but a grand jury did not convene with respect to Vasquez. The case against Vasquez was initiated by complaint and preliminary hearing rather than an indictment. [*See* Doc. No. 8, p. 2.]

circumstances, where a § 2254 petitioner failed to raise claims on direct appeal to the New Mexico state courts, the Tenth Circuit Court of Appeals reasoned:

> "On habeas review, this Court will not consider issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." Hickman v. Spears, 160 F.3d 1269, 1271 (10th Cir.1998). This Court has previously held that New Mexico's procedural bar at issue here is an independent and adequate state procedural ground. Jackson v. Shanks, 143 F.3d 1313, 1318 (10th Cir.1998) ( "Our review of New Mexico cases indicates that New Mexico courts have consistently and even handedly applied the rule waiving issues not raised on direct appeal for purposes of post-conviction relief."). [The habeas petitioner] has failed to demonstrate cause that would avoid the procedural bar with respect to his Brady and Sixth Amendment claims. *See* Coleman v. Thompson, 501 U.S. 722, 754, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) ("the petitioner ... must bear the burden of a failure to follow state procedural rules.").

Scott v. Romero, 153 Fed. Appx. 495, 497 (unpublished decision) (10th Cir. Nov. 2, 2005), *cert. denied*, __ S.Ct. __, 2006 WL 323975 (Apr. 17, 2006).

25.     So, too here.  The above-mentioned claims may not be decided on federal habeas review because Vasquez did not raise them on direct appeal.  Moreover, Vasquez failed to demonstrate cause that would avoid the procedural bar.  Indeed, he did not respond to Respondent's Motion to Dismiss.  Thus, all of the claims discussed at ¶ 23 are procedurally barred.

### Ineffective Assistance of Counsel Claim

26.     With respect to the ineffective assistance claim, the Court observes first that Respondent argued in its motion to dismiss that this claim, like the other claims identified *supra* at ¶ 23, is procedurally barred for failure to raise the claim on direct appeal.

27. The Court does not agree that Vasquez's ineffective assistance claim is procedurally barred. In Jackson, the Tenth Circuit held that "in habeas proceedings where 'the underlying claim [defaulted] is ineffective assistance of counsel, . . . the 'general' rule [of waiver of claims not raised on direct appeal] must give way because of countervailing concerns unique to ineffective assistance claims." 143 F.3d at 1318 (internal citations omitted), *cert. denied,* 525 U.S. 950 (1998). The Tenth Circuit concluded that the ineffective assistance of counsel claim in Jackson was not waived under circumstances where the petitioner had no chance to develop facts relating to his counsel's performance and had the same counsel during his trial and direct appeal. "Absent the opportunity to consult with new counsel to ascertain whether counsel in his direct criminal proceedings performed adequately or develop facts relating to his counsel's performance, the state's imposition of a procedural bar 'deprives [petitioner] of any meaningful review of his ineffective assistance claim.' Id. at 1319 (internal citations omitted). Thus, Vasquez's ineffective assistance of counsel claim need not have been raised on appeal; he could have raised it in a state habeas petition and still could do so.

28. While the Court does not consider the ineffective assistance of counsel claim procedurally barred, the Court would have found that Vasquez had not exhausted the claim since he did not raise it in a state habeas petition. Despite the Court's determination that the claim was not exhausted, Respondent conceded exhaustion in its motion to dismiss: "On this basis [presumably meaning because of procedural default], Respondent concedes exhaustion of all claims identified above" [which includes the ineffective assistance of counsel claim]. Had Respondent not conceded exhaustion, the Court would have been required to dismiss the petition without prejudice as one that was mixed (containing both exhausted and unexhausted claims), or the Court would have allowed

11

Vasquez the option of dismissing the unexhausted claim and proceeding with any exhausted claims. *See* West v. Kolar, 108 Fed. Appx. 568 (unpublished opinion) (10th Cir. Aug. 17, 2004) (remanding because district court had to either dismiss complaint without prejudice in its entirety or allow inmate to dismiss unexhausted claims and proceed only with the exhausted claims).

29.     Given Respondent's written concession that the ineffective assistance of counsel claim was exhausted, the Court need not find that the petition is a mixed petition, nor does Petitioner need to exhaust the claim by raising it in a state habeas petition. Because of Respondent's concession, the Court ordered the record proper to analyze the ineffective assistance counsel claim on its merits.

30.     An accused has a Sixth Amendment right to assistance of counsel in a criminal prosecution, which includes the right to effective assistance of counsel at trial. Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063-64 (1984). "The essence of a claim of ineffective assistance is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." Kimmelman v. Morrison, 477 U.S. 365, 374, 106 S.Ct. 2574, 2582 (1986).

31.     To establish ineffective assistance of counsel, Vasquez must make a two-prong showing: (1) that counsel's performance was constitutionally defective; and (2) that the deficient performance prejudiced the defense, in that counsel's errors were so serious as to deprive the defendant of a defense. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. To prove deficient performance, Vasquez must overcome the presumption that counsel's conduct was constitutionally effective. Duvall v. Reynolds, 139 F.3d 768, 776 (10th Cir.), *cert. denied*, 525 U.S. 933, 119 S.Ct. 345 (1998). Scrutiny of counsel's performance must be "highly deferential" and must avoid the distorting effects of hindsight. Miles v. Dorsey, 61 F.3d 1459, 1474 (10th Cir. 1995), *cert. denied*,

516 U.S. 1062, 116 S.Ct. 743 (1996). In order to be found constitutionally ineffective, trial counsel's performance must have been completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy. Hoxsie v. Kerby, 108 F.3d 1239, 1246 (10th Cir.), *cert. denied*, 522 U.S. 844, 118 S. Ct. 126 (1997).

32.     Vasquez's ineffective assistance of counsel claim is weak at best. He essentially alleges nothing more than his trial counsel failed to cross-examine a witness. [Doc. No. 1, "Argument".] His allegations lack detail and are vague.

33.     The Court reviewed all aspects of Vasquez's trial counsel's defense of his case. Defense counsel Lahrman thoroughly and vigorously defended the case. She filed a number of pre-trial motions, including a motion to suppress. At the preliminary hearing and suppression hearing, defense counsel persisted in emphasizing the discrepancies in descriptions of the suspect given by the victim (Ms. McCoy), the dispatcher, and the police officer. Even during a bond hearing, attorney Lahrman strongly urged the Court that the prosecution's case was one of the weakest she had seen and that the district attorney's office had received bad press about this case. [11/15/04 Bond Hearing Tape.]

34.     Defense counsel aggressively cross-examined the police officer at the suppression hearing and during trial. On cross-examination of the officer at trial, defense counsel effectively brought out inconsistent testimony by the officer, including the officer's testimony at the preliminary hearing that he understood the suspect was possibly Hispanic and riding a red bicycle, contrasted with his trial testimony where the officer no longer testified that he had that information. At trial, defense counsel also cross-examined the dispatcher and Ms. McCoy regarding the suspect's physical description and what information was conveyed to 911 and to the officer. [12/1/04 Suppression

Tapes 1&2; 2/28/05 Trial Tapes 5-7.]  Yet, notwithstanding defense counsel's best efforts at challenging the key witnesses' credibility, several pieces of evidence were uncontested -- the 911 tape recording of the description given by Ms. McCoy to the dispatcher that basically matched Vasquez's physical description that night, testimony demonstrating that police found Vasquez in the vicinity of Ms. McCoy's neighborhood within minutes of the attempted burglary, testimony that Vasquez fled from police when ordered to stop, and evidence that police found common tools used by burglars on his person.

35.     Vasquez fails to show that his trial attorney's performance was "constitutionally defective" or that any purported deficient performance prejudiced the defense.  Based on the Court's review of the trial tapes and pre-trial proceedings, Vasquez received effective assistance of counsel.  Indeed, it appears that trial counsel resorted to the best possible legal strategy available to her under the circumstances.  Thus, Vasquez's ineffective of counsel claim does not withstand scrutiny.

## Recommended Disposition

36.     For the reasons stated above, the Court concludes that none of Vasquez's claims entitle him to federal habeas relief and therefore, recommends that Respondent's motion to dismiss [Doc. No. 7] be granted, with the result that Vasquez's § 2254 petition [Doc. No. 1] be denied and all of his claims dismissed, with prejudice.  In addition, the Court recommends that Vasquez's Motion for Relief Pending Review [Doc. No. 13], filed April 13, 2006, be denied as moot.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge